UNITED STATES DISTRICT COURT
Southern District of Florida

Case Number: **08-23405**

**CIV-HOEVELER**   MAGISTRATE JUDGE GARBER

NILO JEREZ,

    Plaintiff,

vs.

THE REPUBLIC OF CUBA, FIDEL CASTRO RUZ, individually and as President of the State and Council of Ministers, Head of the Communist Party and Commander-in Chief of the Military, RAUL CASTRO RUZ, individually and as First Vice President of the Head of the Cuban Revolutionary Armed Forces, THE CUBAN REVOLUTIONARY ARMED FORCES, and EL MINISTERIO DEL INTERIOR,

    Defendant(s)

_____/



## COMPLAINT

**COMES NOW** the Plaintiff, NILO JEREZ, and files this his complaint against THE REPUBLIC OF CUBA, FIDEL CASTRO RUZ, individually and as President of the State and Council of Ministers, Head of the Communist Party and Commander-in Chief of the Military, RAUL CASTRO RUZ, individually and as First Vice President of the Head of the Cuban Revolutionary Armed Forces, THE CUBAN REVOLUTIONARY ARMED FORCES, and EL MINISTERIO DEL INTERIOR, and alleges as follows:

1

## NATURE OF THE ACTION

1. This is an action to enforce a prior state court judgment. On January 30, 2007, the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County (the "Florida State Court"), in *Case No. 05-18719 CA9*, entered a Final Judgment against Defendants the Republic of Cuba ("Cuba"), Fidel Castro, Raul Castro, the Cuban Revolutionary Armed Forces and the Ministerio del Interior (hereinafter collectively, "the Cuban Defendants") in favor of Plaintiff, pursuant to the Anti-Terrorism and Effective Death Penatly Act of 1996 ("AEDPA"), 28 U.S.C. § 1605 (a)(7) arising out of the Cuban Defendants extra-judicial torture of Plaintiff, NILO JEREZ. An exemplified copy of the Final Judgment is attached as Exhibit "A".

2. The Final Judgment included the following amounts:

    $50,000,000.00 in compensatory damages;

    $150,000,000.00 in punitive damages.

3. Pursuant to the waiver provisions of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602, et seq. (FSIA"), the Cuban Defendants were, and are, responsible to pay compensatory damages to Plaintiff. The Florida State Court entered the Final Judgment after satisfaction of all conditions precedent, and after giving the Cuban Defendants a full opportunity to participate in the proceedings. Plaintiffs now seek the benefits of the Full Faith and Credit Clause of Article IV, § 1 of the United States Constitution, as implemented by 28 U.S.C. § 1738.

## JURISDICTION AND VENUE

4. Plaintiff is, and at all times material hereto were, nationals of the United States of America and residents of the State of Florida.

5. At all times material hereto, Defendant, Cuba, was a foreign sovereign state as defined by the terms and provisions of the FSIA.

6. At all times material hereto, Defendant, Fidel Castro, was the President of the State and Council of Ministers, Head of the Communist Party and Commander In Chief of the Cuban Revolutionary Armed Forces and was acting both individually and in the course and scope of his stated capacity.

7. At all times material hereto, Defendant, Raul Castro, was the First Vice President of the Council of State and Council of Ministers and the Head of the Cuban Revolutionary Armed forces and was acting both individually and in the course and scope of his stated capacity.

8. At all times material hereto, Defendant, the Cuban Revolutionary Armed Forces, was an agency or instrumentality of Cuba as defined and referenced in the FSIA.

9. At all times material hereto, Defendant, El Ministerio del Interior, was an agency or instrumentality of Cuba as defined and referenced in the FSIA.

10. This action is to enforce the Final Judgment which finally resolved Plaintiff's claims against the Cuban Defendants arising out of the Cuban Defendants extra-judicial torture of NILO JEREZ. The Florida State Court had subject matter over jurisdiction over the underlying action pursuant to the FSIA. Pursuant to the provisions of the FSIA, the Cuban Defendants were, and are, subject to suit in a court

3

of competent jurisdiction in any state court in the United States.

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§ 1330(a), as this is a non-jury civil action against a foreign state. The Cuban Defendants' are not entitled to immunity from this action pursuant to the FSIA, because the Final Judgment was rendered as a result of acts of extra-judicial torture by the Cuban Defendants.

12. This Court has personal jurisdiction over the Cuban Defendants pursuant to the FSIA, and 28 U.S.C. § 1330(b).

13. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §§ 1291(d) and 1391 (f).

## COUNT I-ACTION ON JUDGMENT

14. Paragraphs 1 through 13 are fully incorporated as though stated herein.

15. The Final Judgment is a final disposition of the Plaintiff's claims against the Cuban Defendant's.

16. To date, the Plaintiffs have not collected any amount of the Final Judgment entered in their favor by the Florida State Court on January 30, 2007. Thus, the entire amount of the Final Judgment, plus interest, remains due.

17. The Plaintiffs have filed this action to enforce the Final Judgment, upon which they may execute in this or any other Federal District Court of the United States, against the Cuban Defendants and against any of their assets, wherever situated.

18. Pursuant to 28 U.S.C. § 1738, records of the judicial proceedings of any state court "shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court

annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form."

19. The Cuban Defendants may not raise any defenses as to the merits of the Final Judgment. The Florida State Court possessed jurisdiction over the underlying action, and this Court should enforce the Amended Final Judgment.

20. The Plaintiff is entitled to judgment from this Court based upon the Cuban Defendants failure to satisfy the Final Judgment in its entirety.

21. The Plaintiff is entitled to pre-judgment interest from the date of the Final Judgment dated January 30, 2007, through the date of entry of this Court's judgment. Such interest should be calculated at the Florida statutory rate. In addition, Plaintiff is entitled to post-judgment interest from the date of entry of this Court's judgment, calculated at the federal statutory rate.

**WHEREFORE**, the Plaintiff respectfully request that this Court enter judgment in the favor the Plaintiff, enforcing the Final Judgment, and awarding the Plaintiff damages in the amount of the Final Judgment, pre-judgment and post-judgment interest, and any other relief this Court deems just and proper.

Dated: December 4, 2008

> Hoss Hernandez, P.A.
> Attorney for Plaintiff
> Coconut Grove Bank Bldg., Ste. 602
> 2701 S. Bayshore Drive
> Coconut Grove, Florida  33133
> Tel: (305) 858-2222
> Fax: (305) 858-6097
>
> _____
> HOSS HERNANDEZ, ESQUIRE
> FBN: 852716

IN THE CIRCUIT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 05-18719 CA 9

NILO JEREZ,

        Plaintiff,

vs.

**THE REPUBLIC OF CUBA, FIDEL CASTRO RUZ,** individually and as President of the State and Council Of Ministers, Head of the Communist Party and Commander-in Chief of the Military, **RAUL CASTRO RUZ,** individually and as First Vice President Of The Council of State and Council of Ministers and Head of the Cuban Revolutionary Armed Forces, **THE CUBAN REVOLUTIONARY ARMED FORCES,** and **EL MINISTERIO DEL INTERIOR,**

        Defendants.
_____/

FILED FOR RECORD 2007 JAN 30 PM 3:27

## FINAL JUDGMENT

THIS CAUSE came before the Court for Non Jury trial on Tuesday, January 30, 2007, and after receiving extensive evidence, this Court hereby rules as follows:

    **I.**    **CAUSE OF ACTION AND JURISDICTION**

This is an action which seeks redress, namely, compensatory and punitive damages, for the inhumane and torturous acts committed against NILO JEREZ by the Defendants, THE REPUBLIC OF CUBA, FIDEL CASTRO RUZ, RAUL CASTRO RUZ, THE CUBAN REVOLUTIONARY ARMED FORCES AND EL MINISTERIO DEL INTERIOR and those operating under their direction and orders. The Defendants are liable for their conduct under both

A TRUE OF
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

EXHIBIT "A"

domestic and international law, including, but not limited to, the Torture Victim Protection Act, hereinafter referred to as "TVPA", 28 U.S.C. § 1350. This Court has jurisdiction over the claims asserted by Mr. Jerez pursuant to the Alien Tort Claim Act, 28 U.S.C. § and 28 U.S.C. § 1331, hereinafter referred to as "ATCA."

## II.   FACTUAL BACKGROUND

On New Year's Day, 1959, FIDEL CASTRO and his armed militia seized control of the island of Cuba and soon thereafter established a Communist dictatorship; a regime that to this day has reigned through repression and persecution of the Cuban people.

Since 1959, the Defendants herein have subjected Cuba and its citizens to a totalitarian system with the intent and design to persecute those citizens of Cuba that express opinions contrary to those espoused by FIDEL CASTRO and his fellow Defendants. Among those persecuted are those Cuban citizens who attempt to leave Cuba or who peacefully organize meetings or participate in organizations whose views are different than those of the regime. Since 1959, and through the present, the Defendants herein have persecuted thousands upon thousands of Cuban Citizens, many of whom have been tortured, executed or simply "disappeared."

After witnessing first hand the inhuman behavior of the Defendants, including the removing of families from their homes, confiscation of personal and real property, firing squads executing those who spoke out against the dictatorship and the denial of basic civil rights and liberties of the people of Cuba, the Plaintiff, Nilo Jerez, then just a young man, began to object to such actions and outwardly demonstrated his discontent. As a result of Mr. Jerez' heroic objections and protests to the actions of the Defendants and the Castro regime, Mr. Jerez was arrested in 1964 and sent to a concentration camp in Camaguey, better known as UMAP, which

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

was then under the direction of Cuban Revolutionary Armed Forces and Commander Casilla. During this unlawful incarceration, Mr. Jerez, then only fifteen years of age, was forced to perform agonizing work and other laborious tasks at the direction of his captors while being denied adequate food (often infested with insects) and adequate hygiene and living quarters. During his imprisonment, Mr. Jerez was subjected to such unspeakable tortures as being placed into a tub filled with human feces and urine up to his neck. Understandably Mr. Jerez attempted an escape, however, was re-captured and placed in solitary confinement. He was then subjected to a sham trial at the conclusion of which he was sentenced to a term of imprisonment of 30 years. During his unlawful confinement, Mr. Jerez was thereafter kept in solitary confinement for more than six months at a time and was denied any personal contact with friends or family, even the right to receive or send correspondence. Finally, in 1970, Mr. Jerez was released and placed in a home imprisonment program which required him to report twice a month to the Ministry of the Interior. During his house arrest, notwithstanding clearly stated threats from the Defendants, Mr. Jerez continued to protest and object to the actions of the Castro regime. Within months, Mr. Jerez was again arrested and with only a summary trial was illegally confined again. On this occasion, Mr. Jerez was sent to a psychiatric hospital known as "Mazorra," in Havana, Cuba, for a "medical evaluation." During this three month evaluation, Mr. Jerez was placed in the Sala Castellano psychiatric ward. Despite being described as a "psychiatric hospital," the staff at Mazorra wore military uniforms. In fact, it was obvious to all, including Mr. Jerez that the hospital, and particularly the Sala Castellano ward, was being used by the Defendants in the Castro regime to interrogate and torture Cuban political dissidents with the hope of limiting or halting such conduct in the future. The Plaintiff introduced documentary evidence establishing that military officers, and not doctors, would routinely refer individuals to these psychiatric

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

hospitals including Mazorra. During his incarceration at the Sala Castellano ward, Mr. Jerez was denied clothing and food and was forced to live in inhumane conditions. As his cell did not have toilet facilities, he was forced to live amongst his and others' urine and feces. Throughout his incarceration at the Sala Castellano ward, Jerez was continually interrogated and tortured. Regular torture sessions included electroshock "treatment" whereby electricity was passed through terminals into Mr. Jerez' head and his testicles causing severe pain and ultimately leading to the loss of bodily functions and unconsciousness. These electric shock torture sessions were administered only after Mr. Jerez was placed in a trough of water which included the urine and feces of other victims who had previously lost their bodily functions as a result of their torture sessions. Throughout his incarceration, Jerez and his family were continuously threatened and repeatedly advised that he would be shot should he and/or his family continue protesting or objecting to the actions of the Castro regime.

As a result of the physical and mental torture administered to Nilo Jerez by the Defendants in this case, Mr. Jerez has been left with numerous long term psychiatric and physical injuries including but not limited to:

1. *Post traumatic stress disorder*

2. *Major depression*

3. *Organic brain damage and dysfunction with a loss of multiple cognitive skills including deficits in memory, attention, executive function, cerebral function, visual-spacial skills and motor coordination.*

4. *Hepatitis C which has progressed to cirrhosis of the liver and in all probability will result in a diminished lifespan.*

5. *Sterility*

6. *Impotency and sexual dysfunction*

7. *Incontinence*

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

4

    8. *Insomnia and sleep disorder*

    9. *The loss of all teeth, upper and lower*

    10. *Closed head injury and C-7 fracture with associated arthritis as a result of being struck by the butt of a rifle during his imprisonment*

    11. *The loss of a testicle.*

It has been conclusively established that during his incarceration at Mazorra, the person primarily responsible for the administration of torture, including electric shock treatments, was Eriberto Mederos. This Court received in evidence documents establishing the fact that it was routine for members of the Cuban Armed Forces, and not medical doctors, to order that persons accused of simply voicing their opposition to the Castro government be sent for psychiatric evaluation.

Mederos moved to the United States in 1980 and was naturalized as a US Citizen in 1993. A victim of Mederos recognized him while working in a Miami assisted living facility for the elderly. Eriberto Mederos was indicted in the United States District Court for the Southern District of Florida, Case No. 01-0818 CR MORENO. This Court has taken judicial notice of those proceedings. Said Indictment was based in part upon Mederos having given false statements and testimony in his application for U.S. Citizenship.

The indictment reads in part:

"...When in fact, as the defendant then knew, he had knowingly been associated with and aided the Communist government of Cuba by working for the Cuban government in Mazorra Psychiatric Hospital and by abusing and torturing political prisoners held therein on behalf of said government...

..."when in fact, as the defendant then knew, he had persecuted political prisoners and opponents of the Communist government of Cuba by administering repeated electric shocks to such persons while they were incarcerated in the Mazorra Psychiatric Hospital."

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

CASE NO. 05-18719 CA (9)

Although represented by competent counsel, he was convicted by a Federal jury in Miami Florida on August 1, 2002.

During the course of the trial, the jury heard the testimony of witnesses, including Jerez, whom Mederos tortured at Mazorra, all of whom detailed their torture including forced drug injections and the administration of electric shocks.

The actions of the Defendants described herein constitute tortute as defined under Section 3 (b) of the Torture Victim Protection Act:

"...Any act directed against an individual in the offender's custody or physical control by which severe pain or suffering...whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person, information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or third person or for any reason based on discrimination of any kind."

The Defendants' actions also violate the following laws, agreements, conventions, resolutions and treaties, which constitute specific examples of the applicable laws of nations and customary international law:

(I) United Nations Charter, 59 Stat. 1031, 3 Bevans 1153 (1945);

(II) Universal Declaration of Human Rights, G.A. Res. 217A (iii), U.N. Doc.A/810 (1948);

(III) International Covenant on Civil and Political Rights, G.A. Res. 2220 (xxi), 21 U.N. Doc. A/6316 (1966).

(IV) Convention against Torture and other Cruel, Inhumane or Degrading Treatment or Punishment, G.A. res 39/46, 39 U.N. Doc., GAOR Supp. (No.51) at 197, U.N. Doc. A/39/51 (1984) (ratified 10/28/98);

(V) Declaration on the Protection of All Persons from Being Subjected to Torture and other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 3452, 30 U.N. Doc., GAOR Supp. (No. 34) at 91, U.N. Doc. A/10034 (1976);

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

CASE NO. 05-18719 CA (9)

    (VI)    Common Law of the United States of America; and,

    (VII)    Statutes and common law of the State of Florida, including but not limited to intentional infliction of emotional distress.

### III. COMPENSATORY DAMAGES

Based upon the lay and expert testimony received, and after contemplation of the circumstances surrounding the continuous torture and inhumane treatment of Nilo Jerez by the Defendants, damages are hereby awarded by this Court to Nilo Jerez for this element of damage in the amount of $ _50,000,000.00_ .

### IV. PUNITIVE DAMAGES

"The purpose of Punitive Damages, as the name implies is to punish wrongful conduct—to prevent its repetition by the offender and to deter others who might choose to emulate it…The victim to whom the award is made thus stands as a surrogate for civilized society in general; the victim is made more than whole in order that others may be spared a similar injury….Yet another reason to award punitive damages in this particular case is to vindicate the interest to society at large in the collection and dissemination of complete and accurate information about world conflicts." *Anderson v. The Islamic Republic of Iran*, 90 F. Supp 2d 107 (USDC DC 2000).

The facts supporting the punitive claim are set forth in the Plaintiffs' Complaint and Sworn Statement, all of which are deemed admitted or otherwise established as a matter of law pursuant to the Defendants' default in this case. The punitive claim in this case was also supported by the testimony of lay and expert testimony, particularly Dr. Jorge Herrera, which corroborated the damages sustained by Plaintiff. The Court has also considered the facts surrounding the conviction of Eriberto Mederos in 2002.

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

CASE NO. 05-18719 CA (9)

In accordance therewith, punitive damages are hereby awarded against FIDEL CASTRO RUZ, individually, and as President of the State and Counsel of Ministers, Head of the Communist party and Commander in Chief of the Military, RAUL CASTRO RUZ, individually, and as First Vice President of the Counsel of State and Counsel of Ministers and head of the Cuban Revolutionary Armed Forces, THE CUBAN REVOLUNTIONARY ARMED FORCES, EL MINISTERIO DEL INTERIOR and THE REPUBLIC OF CUBA to which the actions of its agents and instrumentalities are imputed, punitive damages in the amount of: $150,000,000.00

IT IS HEREBY ORDERED AND ADJUDGED that a Final Judgment is hereby GRANTED on behalf of Plaintiff, NILO JEREZ, as follows:

1. Compensatory Damages in the amount of: $50,000,000.00
2. Punitive Damages in the amount of: $150,000,000.00

For which sum execution may issue forthwith against the said Defendants and any of their assets wherever situated. This Court will retain jurisdiction to enforce this judgment or any matters pertaining thereto. This Judgment shall bear interest at a rate of 11% percent per year from date of entry until satisfied.

DONE AND ORDERED in Miami-Dade County, Florida this 30 day of Jan, 2007.

THOMAS S. WILSON, JR.
CIRCUIT COURT JUDGE

Copies furnished to:
ALFONSO J. PEREZ, ESQ.
JORGE BORRON, ESQ.
FULVIA A. MORRIS, ESQ.

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original on file in this office. January 30, AD 2007
HARVEY RUVIN, Clerk, of Circuit and County Courts
Deputy Clerk

8

≈JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
Nilo Perez

**DEFENDANTS** The Republic of Cuba, Fidel Castro, et al

(b) County of Residence of First Listed Plaintiff: Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Hossy Hernandez
2701 S. Bayshore Dr #602
Miami, FL 33133

Attorneys (If Known): N/A

FILED BY ___ 08 DEC -9 PH 4:03 STEVEN M. LARIMORE CLERK U.S. DIST. CT. S.D. OF FLA.

(d) Check County Where Action Arose: ☒ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☒ 6 |

Dade 08CV23405-Hoeveler/Garber

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☒ NO    b) Related Cases ☐ YES ☒ NO
JUDGE _____    DOCKET NUMBER _____

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity): 28 USC 1738

LENGTH OF TRIAL via 1 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD    S/    DATE 12/9/08

FOR OFFICE USE ONLY
AMOUNT $350.00    RECEIPT # 991652    IFP
12/09/08